UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:22-cv-00639 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| LAWSON PRODUCTS, INC., MICHAEL G. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| DECATA, ANDREW B. ALBERT, I. | : **SECURITIES EXCHANGE ACT OF** |
| STEVEN EDELSON, LEE S. HILLMAN, J. | : **1934** |
| BRYAN KING, MARK F. MOON, and | : |
| BIANCA MARTINEZ RHODES, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Lawson Products, Inc. ("Lawson or the "Company") and the members Lawson board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Lawson by Luther King Capital Management Corporation ("LKCM") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 14, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Lawson and Tide Sub, LLC ("Merger Sub 1"), a wholly owned subsidiary of Lawson, will merge with and into TestEquity Acquisition, LLC ("TestEquity"), with TestEquity surviving the merger as a wholly-owned subsidiary of Lawson; and thereafter, Lawson and Gulf Sub, Inc. ("Merger Sub 2"), a wholly-owned subsidiary of Lawson, will merge with and into 301 HW Opus holdings, Inc. ("Gexpro Services"), with Gexpro Services surviving the merger as a wholly-owned subsidiary of Lawson (the "Proposed Transaction"). TestEquity and Gexpro Services are both owned by LKCM. Upon closing of the Proposed Transaction, Lawson shareholders will own 47% of the combined company with LKCM owning 17% through TestEquity and 36% through Gexpro Services. Further, affiliates of LKCM currently own approximately 48% of Lawson's outstanding shares, and upon consummation of the Proposed Transaction, will own 75% of Company shares.

3.      As discussed below, Defendants have asked Lawson stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Cowen and Company, LLC ("Cowen") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Lawson stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Lawson is traded on the NASDAQ Stock Exchange, headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Lawson common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Michael G. DeCata has served as a member of the Board since 2013 and is the Company's President and Chief Executive Officer.

11. Individual Defendant Andrew B. Albert has served as a member of the Board since 2009.

12. Individual Defendant I. Steven Edelson has served as a member of the Board since 2009.

13. Individual Defendant Lee S. Hillman has served as a member of the Board since 2004.

14. Individual Defendant J. Bryan King has served as a member of the Board since 2017.

15. Individual Defendant Mark F. Moon has served as a member of the Board since 2019.

16. Individual Defendant Bianca Martinez Rhodes has served as a member of the Board since 2021.

17. Defendant Lawson is incorporated in Delaware and maintains its principal offices at 8770 W. Bryn Mawr Avenue, Suite 900, Chicago, Illinois 60631. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "LAWS."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

20. Lawson distributes products and services to the industrial, commercial, institutional, and government maintenance, repair, and operations marketplace in the United States and Canada. It operates in two segments, Lawson and Bolt. The Company's products include fastening systems, cutting tools and abrasives, fluid power products, specialty chemicals, electrical products, aftermarket automotive supplies, safety products, welding and metal repair products, and

other products. It serves customers operating in the automotive repair, commercial vehicle maintenance, government, manufacturing, food processing, distribution, construction, oil and gas, mining, wholesale, service, and other industries. The Company sells its products through sales representatives, as well as directly from its Website. Lawson was incorporated in 1952 and is headquartered in Chicago, Illinois.

21. On December 29, 2021, Lawson announced that they had entered into a proposed transaction:

> CHICAGO & FORT WORTH, Texas--(BUSINESS WIRE)-- **Lawson Products, Inc. (NASDAQ: LAWS) ("Lawson")**, a leading distributor of products and services to the MRO marketplace, and **LKCM Headwater Investments ("LKCM Headwater")**, the private investment arm of Luther King Capital Management Corporation, today jointly announced the execution of definitive merger agreements pursuant to which Lawson will combine in an accretive transaction on an adjusted basis with two of LKCM Headwater's portfolio companies, TestEquity and Gexpro Services, in an all stock transaction. The affiliates of LKCM Headwater that currently own TestEquity and Gexpro Services will receive solely Lawson common stock as consideration for the transactions. All three leading niche industrial distribution companies will be brought under a holding company with all three companies operating independently with their existing management teams as separate divisions.
>
> Upon closing of the combination, Lawson's capitalization is expected to consist of approximately 19,400,000 shares, of which approximately 9,100,000 shares, or 47%, would be held by existing Lawson shareholders, 3,300,000 shares, or 17%, would be held by the existing owners of TestEquity (including LKCM Headwater affiliates and the TestEquity management team), and 7,000,000 shares, or 36%, would be held by the existing owners of Gexpro Services (including LKCM Headwater affiliates and the Gexpro Services management team). Existing owners of TestEquity and Gexpro Services also have the ability to earn an additional 700,000 shares and 1,000,000 shares, respectively, upon achieving certain additional accretion and other metrics set forth in the merger agreements.

Affiliates of LKCM Headwater currently beneficially own approximately 48% of Lawson's outstanding shares. Upon completion of the combination, affiliates of LKCM Headwater will beneficially own approximately 75% of Lawson's shares, and their ownership would increase to approximately 77% of Lawson's shares if all of the 1,700,000 additional shares are earned.

All Lawson shares outstanding immediately before the completion of the combination will remain outstanding after the combination, and existing Lawson shareholders will continue to hold shares in the combined company.

## Combined Holding Company Highlights

- Combined estimated pro forma annual revenue of more than $1 billion and combined estimated pro forma annual adjusted EBITDA of more than $100 million
- Balanced mix of production (OEM) and maintenance/aftermarket (MRO) serving 120,000+ longstanding customers reduces cyclical impacts of short- and long-term demand drivers
- Ability to enhance long-term organic growth rates through offering more products and services to each company's customers and our end markets, many of which are experiencing secular tailwinds
- Robust acquisition pipeline with active negotiations with several accretive targets likely to close in the next 6 to 18 months
- Enhanced product sourcing opportunities including private label opportunities while expanding channels to market
- Ability to leverage best practices, back-office resources and technology across the platform to help drive operating efficiencies and leverage shared solutions
- Long-term investor with distribution focus as strategic partner with long-term investment horizon to compliment best-in-class management teams that are well-aligned with shareholders and focused on growing their businesses together
- Asset-light business model with keen focus on generating high returns on invested capital
- Pro forma debt to adjusted EBITDA of approximately 3x at closing

"Through the combination of these three complementary valued-added distribution businesses, we strongly believe the holding company will be well-positioned to leverage its combined leadership, strong balance sheet and stable cash flow generation to drive more transformational value creation for shareholders," said J. Bryan King, Chairman of the Board of Directors of Lawson and Managing Partner of LKCM Headwater. "Our confidence in the ultimate success of the combination is evident in that we will receive no cash proceeds, and not sell any shares in connection with the combination. We will maintain a substantial investment in the

6

combined company. We have approached and will continue to approach the combination of these businesses by aligning our interests with those of current Lawson shareholders, as well as the interests of other long-term shareholders in the holding company. Beyond our financial commitment, our investment team has invested, and will continue to invest, substantial amounts of their time engaging in constructive efforts to leverage our resources and extensive distribution expertise to create a more valuable and durable business, without receiving any compensation from the holding company, including my continued service as Chairman on an unpaid basis."

Mr. King continued, "Our long-term value creation perspective in the industrial distribution segment has been refined over decades. This strategy has been heavily vetted with the focus of driving further shareholder returns and creating value with lower risk for each of the three complementary businesses. We believe these businesses will have a greater ability to compound shareholder returns faster through scale, while creating higher sustained returns for investors with the right collection of leadership identifying and executing on organic and inorganic opportunities to sustain that compounding engine."

"This combined publicly-traded specialty distribution holding company is expected to generate estimated pro forma annual revenue of more than $1 billion and estimated pro forma annual adjusted EBITDA of more than $100 million upon the closing of the combination. At these levels, we believe the holding company will be well-positioned to reinvest opportunistically and selectively in a pipeline of organic and acquisitive growth opportunities in its large, fragmented markets with secular tailwinds. The combination is expected to create the ability to accelerate cash flow growth, maintain the flexibility to opportunistically engage in share buybacks, and further improve the long-term competitive position of each of the industrial distribution verticals within the post-combination holding company," concluded Mr. King.

"As the CEO and a fellow shareholder of Lawson, I am excited to be moving forward with the LKCM Headwater team to have an aligned vision and mission of creating a best-in-class specialty distribution holding company. This combination transforms each of our highly complementary businesses, creates a greater level of scale, enables accelerated growth, and expands our competitive advantage," said Michael DeCata, President and Chief Executive Officer of Lawson. "I am proud of the job our team has done over the past several years building a platform for growth and improving

profitability. This combination will provide all three companies with a more complete offering of products, services, and capabilities to enhance the value proposition for current and future customers. Going forward, we will have a more robust set of acquisition opportunities where cross-selling and cost synergies will play an important role in delivering enhanced financial performance and greater returns to shareholders. We will also benefit significantly from even more focused support from the LKCM Headwater team and their long history of working proactively with management teams in the industrial distribution segment to maximize long-term shareholder value creation," concluded Mr. DeCata.

**Strategic and Financial Rationale**
The holding company structure is expected to enable Lawson, TestEquity and Gexpro Services to maintain their respective high-touch, technical, value-added service delivery models and customer relationships within their specialty distribution businesses under the leadership of their separate business unit management teams with continued oversight from Lawson's board of directors. The holding company will have the ability to utilize its combined financial resources to accelerate its expansion strategy through business acquisitions and organic growth across the combined platform. At the same time, the holding company structure will enable the combined companies to leverage best practices, back-office resources and technology across the platform to help drive operating efficiencies and leverage shared solutions.

The combination is expected to increase the reach of the combined companies into the highly fragmented OEM/MRO distribution markets and broaden their service capabilities, including vendor managed inventory, beyond Lawson's existing MRO focus. Lawson currently services approximately 90,000 customers, while TestEquity and Gexpro Services provide support to over 30,000 and over 1,800 customers, respectively. The combination will result in greater end market diversification for the holding company with the addition of a significant presence in the OEM distribution and electronic test and measurement equipment and supplies market. The holding company will have the ability to be a one-stop provider for OEM and MRO customers and will enable Lawson, TestEquity and Gexpro Services to cross-sell and deliver their services across the combined customer base.

The combination will also provide the opportunity to expand digital marketing channels to Lawson's historical sales channel of on-site sales representatives. In addition, the combination will enable the

combined companies to improve their product sourcing capabilities and purchasing power within overlapping and new suppliers.

**Leadership and Governance**
Upon the closing of the combination, Lawson, TestEquity and Gexpro Services will continue to be led by their existing senior management teams. J. Bryan King will continue to serve as Chairman of the Board of Directors of the holding company alongside the existing individuals serving on the board of directors of Lawson. Robert Connors will continue to serve as the Chief Executive Officer of Gexpro Services and Steve Newland will continue to serve as Chief Executive Officer of TestEquity. Michael DeCata and Ron Knutson will assume the positions of Chief Executive Officer and Chief Financial Officer, respectively, of the holding company in addition to their responsibilities at Lawson's existing operating company.

**Timing, Approval and Advisors**
The combination is subject to various closing conditions, including receipt of regulatory approvals and the approval by the affirmative vote of the holders of a majority of the total voting power of Lawson shares not owned by various affiliates of LKCM Headwater present in person or by proxy at a special stockholders meeting, where a majority of the outstanding Lawson shares not owned by various affiliates of LKCM Headwater are present in person or by proxy at the special meeting. The combination is expected to close during the second quarter of 2022. The Board of Directors of Lawson formed a Special Committee of independent directors who are independent of LKCM Headwater to evaluate and negotiate the transactions on behalf of Lawson. The Special Committee approved, among other things, the merger agreements and the transactions contemplated thereby and recommended that Lawson's Board of Directors approve the merger agreements and the transactions contemplated thereby. Thereafter, Lawson's Board of Directors (acting on the recommendation of the Special Committee), with certain directors recusing themselves from the vote, approved among other things the merger agreements and the contemplated transactions.

Cowen served as exclusive financial advisor to the Special Committee. Piper Sandler served as exclusive financial advisor, and provided a fairness opinion, to TestEquity and Gexpro Services. Baird served as financial advisor to LKCM Headwater. Jenner and Block served as counsel to the Special Committee and Lawson, and Mayer Brown served as counsel to TestEquity and Gexpro Services.

* * *

22. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Lawson's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23. On January 14, 2022, Lawson filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Lawson Financial Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Lawson management and relied upon by Cowen in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Lawson management provided to the

Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. For the TestEquity Management Forecast and Gexpro Services Management Forecast projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Cowen's Financial Analysis*

30. With respect to Cowen's *Analysis of Selected Publicly Traded Companies Analyses* for the Company, TestEquity, and Gexpro Services, the Proxy Statement fails to disclose the individual metrics for the companies observed by Cowen in the analysis, including implied enterprise value and Adjusted EBITDA for each selected public company.

31. With respect to Cowen's *Discounted Cash Flow Analysis* for TestEquity, the Proxy Statement also fails to disclose: (i) the implied terminal value for TestEquitiy; (ii) the inputs and

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

assumptions underlying the use of terminal EBITDA multiples of 10.0x to 12.0x; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.75% to 10.75%.

32. With respect to Cowen's *Discounted Cash Flow Analysis* for Gexpro Services, the Proxy Statement also fails to disclose: (i) the implied terminal value for Gexpro Services; (ii) the inputs and assumptions underlying the use of terminal EBITDA multiples of 10.0x to 12.0x; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.75% to 10.75%.

33. With respect to Cowen's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the estimated terminal values for the Company; (ii) the inputs and assumptions underlying the use of terminal EBITDA multiples of 10.0x to 12.0x; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.5% to 9.5%.

34. With respect to Cowen's *Relative Contributions Analyses* for the Company, the Proxy Statement fails to disclose the individual metrics for the transactions observed by Cowen in the analysis, including the implied purchase prices announced on such date for the selected transaction, the implied enterprise value last-twelve-months Adjusted EBITDA of each selected target company.

35. With respect to Cowen's *Wall Street Price Targets* analysis, the Proxy Statement fails to disclose the research analysts observed and the stock price targets for Lawson's common stock published by each analyst.

36. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Cowen and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Lawson within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Lawson, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Lawson, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Lawson, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 25, 2022                     By:   **MELWANI & CHAN LLP**

/s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*